## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DAVID R. ROMERO,

      Plaintiff,

v.                                                                                    Civ. No. 14-1018 SCY

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse and Remand the

Social Security Administration (SSA) Commissioner's decision to deny Plaintiff disability

insurance benefits. ECF No. 23. For the reasons discussed below, the Court will grant Plaintiff's

motion and remand this action to the Commissioner for further proceedings consistent with this

opinion.

I.     BACKGROUND

    A.  **Plaintiff's Medical History**

      Plaintiff David Romero is a forty-eight year old man with mental and physical disabilities

that he alleges have rendered him disabled. ECF No. 20, Administrative Record ("AR") 212-219.

        *i.  Plaintiff's Mental Health History*

      On April 4, 2011, Dr. Michael Cummings, Ph.D gave Plaintiff a mental status

examination. AR 325-28. Dr. Cummings noted that Plaintiff exhibited significant pain moving

around. AR 325. Upon administration of several tests, Dr. Cummings found that Plaintiff's

"[i]ntellectual functioning was estimated within the below average range," with cognitive

limitations indicative of a learning disability, moderate limitations with regard to concentration, understanding and carrying out complex instructions, and mild limitation with regard to working without supervision and adaptation. AR 326-27. Dr. Cummings found that there was no indication of a formal thought disorder, that Plaintiff displayed adequate memory, and that his global functioning assessment (GAF) score was 71. AR 326-27.

On May 31, 2011, Plaintiff took a Wechsler Adult Intelligence Scale—Fourth Edition (WAIS IV) examination. AR 352. Dr. Robert Krueger, Ph.D. interpreted the results and found that Plaintiff demonstrated "significant impairment with all cognitive skills that were tested," including "serious problems with concentration and memory." AR 355-56. He assessed Plaintiff's IQ at 59, his GAF at 45, and found that Plaintiff was likely mildly retarded. AR 355-56. Dr. Krueger opined that Plaintiff would have marked impairment in understanding, remembering, and following simple or complex work instructions, maintaining pace and persistence in work environments, adjusting to changes in work environments, and long distance travel. AR 357. He also found that Plaintiff would have moderate impairment in relationships with coworkers, supervisors, and the general public, and being aware of and reacting appropriately to dangers in work environments. AR 357.

On June 23, 2011, Dr. Jane Cormier, Ph.D., also performed a mental residual functional capacity assessment. She found that Plaintiff had only mild restrictions in his social functioning, and moderate restrictions maintaining concentration, persistence, and pace, explaining that her conclusion was founded on his prior work history – although she did concede that Plaintiff might have "a severe mental impairment." AR 380-396.

      *ii.  Plaintiff's Physical Health History*

On September 8, 2009, Plaintiff's knees and feet were imaged, indicating that Plaintiff had signs of early arthritis in both, as well as calcaneal spurs in his feet. AR 309-10. In October 2009, Plaintiff was seen by Dr. Matthew McKinley, M.D., for foot and knee pain. Dr. McKinley stated that imaging studies demonstrated that Plaintiff had mild osteoarthritic changes in his knees and feet, pain with axial loading of the patellae, limited forward flexion of his hamstrings at 80 degrees, but otherwise good strength and range of motion in his extremities. AR 284.

Imaging of Plaintiff's cervical spine and lumbar spine on December 11, 2009 showed mild degenerative changes at Plaintiff's C5-C6 vertebrae and in his lumbar spine. AR 307-08. An MRI from April 2010 indicates that Plaintiff's knees were generally normal, although the patellofemoral joint showed signs of chondromalacia patella grade IV and mild pre patellar bursitis. AR 306.

Plaintiff was examined by Dr. Herbert Rachelson, M.D., an orthopedist, on June 9, 2010, for treatment of his left knee. AR 277, 305. Dr. Rachelson noted that Plaintiff had restricted range of motion in his lower back, but that his range of motion in his knees was good. *Id.* He noted that Plaintiff's gout might account for his knee pain, and observed that the left knee exhibited "tender . . . medial compartment with patellofemoral popping and tenderness . . . [and] positive medial McMurray test for discomfort and slight popping sensation," and that Plaintiff had slightly hypermobile patellae. AR 278. Dr. Rachelson noted that imaging of Plaintiff's knees did not exhibit significant degenerative changes. AR 305.

On July 9, 2010, Plaintiff had an MRI of his cervical and lumbar spine, which revealed minimal degenerative changes of the cervical spine with mild posterior osteophyte disc complex at both C3-C4 and to a lesser extent C4-C5, and mild degenerative changes of the lower spine with mild bulging discs at L4-L5 and L5-S1. AR 303-04. On January 17, 2011, Plaintiff's blood

tests indicated that his C reactive protein levels were high, although his other test results, such as rheumatoid factor, were within a normal range. AR 341-45.

Plaintiff received a physical residual function capacity (RFC) assessment from Dr. N.D. Nickerson, M.D., on January 30, 2011. AR 311-318. Dr. Nickerson found that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk or sit for 6 of 8 hours, and had no restrictions on pushing or pulling; that Plaintiff could climb, balance, stoop, kneel, crouch, and crawl frequently, and had no reaching limitations. AR 312-13. Dr. Michael Slager affirmed this RFC on June 23, 2011. AR 377-78.

On March 22, 2011, Dr. Belyn Schwartz, M.D. treated Plaintiff for his neck, shoulder, lower back, and knee pain. AR 322. She noted that Plaintiff had difficulty moving from a sitting to a standing position, but could walk across the room. AR 323. She further observed that Plaintiff had some loss of balance with heel-toe walking, had difficulty bending over, his cervical range of motion was "75% of expected" and his straight leg raises were limited to 25 degrees. AR 324. She opined that he could not return to being a bus driver based on his symptoms. AR 324. She again saw Plaintiff on November 28, 2011, during which Plaintiff continued to complain of chronic back, neck, knee, and shoulder pain. AR 399-400. Plaintiff saw Dr. Schwartz on June 21, 2012, complaining of significant low back, neck, shoulder, elbow, and knee pain. AR 447-48. On August 18, 2012, Dr. Schwartz completed a "medical opinion re: ability to do physical activities" in which she stated that Plaintiff was capable of sitting or standing for less than 2 hours in an 8 hour workday, that he could not walk a city block without resting, that he needed assistive devices to walk, that he could lift at most 10 pounds and that only occasionally, that he had significant limitations in doing repetitive reaching, and that he should never twist, crouch, climb stairs, or climb ladders at work, and only occasionally bend.

AR 429-31. Dr. Schwartz also completed a lumbar spine assessment reflecting the same limitations, noting that Plaintiff's X-rays showed signs of osteoarthritis, and listing other objective signs such as a positive straight leg raising test and muscle spasms. AR 432-36, 445.

On February 9, 2012, Plaintiff was treated by Dr. Jemery Kaufman, M.D., complaining of, among other symptoms, numbness in his hands and severe neck and back pain. AR 407-08. Dr. Kaufman referred Plaintiff for a physiatry consultation with regard to his hands and neck pain. AR 408. On February 23, 2012, at this consultation, Dr. Matthew Harrison, M.D., performed nerve conduction tests on Plaintiff and diagnosed Plaintiff with carpal tunnel syndrome in both wrists. AR 412-16. On March 8, 2012, Plaintiff again saw Dr. Kaufman, who noted that Plaintiff reported that he had pain in both heels due to his heel spurs and ongoing issues with his hands and wrists. AR 404-06. On June 11, 2012, Plaintiff returned to Dr. Kaufman, complaining of shooting, numbing pain in his upper left leg. AR 421-22. Plaintiff's pelvis was imaged on July 16, 2012, but no significant abnormalities were detected. AR 427.  On August 20, 2012, Dr. Kaufman also completed a "medical opinion re: ability to do physical activities," where he found that Plaintiff could not walk a city block, that he could sit or stand for less than 2 hours in an 8 hour workday, occasionally twist, stoop, crouch, and climb stairs, but never climb ladders, occasionally lift up to 10 pounds, and had some reaching limitations. AR 440-42.

### B.  Procedural History

Plaintiff filed his Title II application for disability insurance benefits on December 9, 2010. AR 44. His claims were denied on February 3, 2011, and his request for reconsideration denied on June 24, 2011. *Id*. Plaintiff requested a hearing on July 21, 2011. *Id*. A video hearing was held on August 22, 2012. *Id*. On October 22, 2012, the ALJ denied Plaintiff's request for

5

benefits. AR 44-59. In his decision, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, obesity, carpal tunnel syndrome, diabetes mellitus, adjustment disorder with anxiety, mild mental retardation, mild degenerative joint disease and osteoarthritis in the knees. AR 47. After finding that these impairments did not meet or equal a Listing, the ALJ made the following RFC finding:

> claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead. The claimant can frequently handle and finger. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, the general public, and usual work situations.

AR 50.

On appeal, the Appeals Council generally adopted the ALJ's finding at each step of the sequential evaluation, including the RFC. However, the Appeals Council stated that Plaintiff also had the following Step 2 severe impairments: borderline intellectual functioning and bilateral rotator cuff impingement. AR 5. The Appeals Council found that borderline intellectual functioning was a more appropriate finding than mental retardation because of the lack of adaptive deficits in Plaintiff's functioning. *Id.* It further found that the ALJ should have, but failed to, find that Plaintiff suffered from bilateral rotator cuff impingement based on his medical record. *Id.* The Appeals Council concluded that, even in light of the addition of these severe impairments, the ALJ made the correct determination at Step 4, and the correct vocational finding at Step 5, and denied Plaintiff's appeal on September 8, 2014. AR 6-7.

II.   APPLICABLE LAW

A.  Disability Determination Process

6

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called Claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B.  Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III.   ANALYSIS[1]

---

[1]Here, the final decision under review is the decision of the Appeals Council. 20 C.F.R. § 404.981. Thus, to the extent that Plaintiff challenges the final decision, the Court will review the Appeals Council's

Plaintiff raises two challenges to the ALJ's findings: first, that the ALJ failed to properly analyze the opinions of Drs. Krueger, Schwartz, and Kaufman; and second, that the RFC is flawed because it does not accurately reflect Plaintiff's mental limitations. ECF No. 24. The Commissioner responds that the RFC is supported by substantial evidence because the ALJ properly analyzed Drs. Krueger, Schwartz, and Kaufman's opinions and accounted for Plaintiff's mental limitations in the RFC. ECF No. 28. Plaintiff has not filed a reply brief.

The Court determines that the ALJ committed reversible error by failing to adequately explain his reasons for not giving any weight to the opinions of treating physicians Schwartz and Kaufman. As a result, the Court does not address Plaintiff's second argument that the RFC failed to accurately reflect Plaintiff's mental limitations.

### A.  Treating Physicians Schwartz and Kaufman

Plaintiff claims the ALJ failed to give appropriate weight to, or properly explain his rejection of, the opinions of Drs. Schwartz and Kaufman as treating physicians. ECF No. 24 at 10. Plaintiff also contends that because Drs. Schwartz and Kaufman were treating physicians, the ALJ should have accorded their opinions significant weight and given them more extensive analysis. ECF No. 24 at 11.

The Court's review of the ALJ's decision shows that rather than individually analyzing the opinions of Dr. Schwartz and Dr. Kaufman, the ALJ rejected both opinions for the same reason. Specifically, the ALJ stated that he gave the opinion of each doctor "no weight as it is not supported [sic] the medical evidence of record or the treatment records from Dr. [Kaufman, Schwartz.] The claimant has demonstrated the ability to perform work as a sheepherder and bus

---

ruling. However, where the Appeals Council adopted the ALJ's reasoning and conclusion, the Court will examine the ALJ's opinion.

driver, which demonstrates that the limitations noted are excessive."[2] AR 56, 57. Plaintiff argues that the ALJ erred because (1) treating physician's opinions are entitled to deference pursuant to *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); (2) even if the opinion is not entitled to deference, the ALJ failed to apply the factors required by 20 C.F.R. § 404.1527(c); and (3) the ALJ failed to provide legitimate reasons for rejecting the treating physicians' opinions. ECF No. 24 at 9-14. The Commissioner responds that the ALJ properly discounted the treating physicians' opinions as being unsupported by medical evidence and adequately addressed the relevant factors. ECF No. 28 at 12-14.

As Plaintiff's treating physicians, the opinions of Dr. Schwartz and Dr. Kaufman must be evaluated according to a sequential two-step process. *See Krauser v. Astrue*, 638, F.3d 1324, 1330 (10th Cir. 2011); *Langley*, 373 F.3d at 1119. First, the ALJ must decide whether a treating physician's opinion commands controlling weight, which it must "if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Krauser*, 638 F.3d at 1330 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374180, at *2). If a treating physician's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined by analyzing the opinion against several factors provided in 20 C.F.R. § 404.1527(c).[3] Here, the ALJ did not address or explain the weight of the factors in 20 C.F.R. § 404.1527(c). Nor did he otherwise adequately explain why he did not accord controlling

---

[2] Except for the names of the doctors, the ALJ's stated reason for rejecting the opinion of each treating physician is exactly the same, including the occurrence of the same typographical error in the first sentence of each stated reason. This indicates that, rather than independently engaging in the required analysis of treating physicians, when dealing with the second treating physician, the ALJ simply recycled the reason he gave for rejecting the first treating physician's opinion.

[3] These factors include (1) the relationship, (2) length of treatment and frequency of examination, (3) nature and extent of the relationship, (4) supportability of the opinion, (5) consistency of the opinion with the record as a whole, (6) specialization of the provider, and (7) other factors brought to the attention of the ALJ. 20 C.F.R. § 404.1527(c).

weight to the opinions of Dr. Schwartz and Dr. Kaufman as treating physicians. His analysis therefore falls short of providing specific, legitimate reasons for rejecting the treating physicians' findings. *See Doyal*, 331 F.3d at 762 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001), for the proposition that an ALJ must supply "specific, legitimate reasons" for rejecting a treating physician's opinion).

Faced with the ALJ's failure to provide citations or references in support of his decision to totally disregard the opinions of Plaintiff's only treating physicians, the Commissioner points out that, earlier in the ALJ's decision, the ALJ summarized the opinions of the treating physicians. ECF No. 28 at 14. But summarizing their opinions is different than providing reasons for totally discounting them. By not providing reasons, the ALJ committed reversible error. The Commissioner attempts to cure this deficiency by providing her own reasons why totally discounting the opinions of Plaintiff's treating physicians could be justified. *Id.* at 13. The Court need not decide whether these reasons would have been sufficient had the ALJ provided them; he did not, and the Court cannot now engage in post hoc rationalization to support the ALJ's decision. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (stating that the Court cannot engage in post-hoc rationalizations to explain the Commissioner's treatment of evidence).

The only specific justification the ALJ provided to support his decision to disregard the opinions of the treating physicians is a nonmedical one - that Plaintiff performed work as an unpaid sheepherder for his family and as a part time bus driver.[4] AR 56, 57. The ALJ did not, however, discuss the requirements of work as a sheepherder or bus driver, or discuss how

---

[4] The ALJ does not acknowledge in his analysis that Plaintiff's work as a sheepherder was unpaid work he performed for his family and which he could no longer perform. Nor does the ALJ acknowledge in his analysis that Plaintiff's work as a bus driver was part time – for two hours in the morning and two hours in the afternoon five days a week, and is also work he can no longer perform.

Plaintiff actually performed these jobs. In other words, the ALJ failed to explain *how* Plaintiff's past work undermined the medical opinions of his treating physicians; he simply stated that it does.[5] The ALJ's complete disregard of the medical opinions of Plaintiff's only treating physicians with no specific explanation other than that Plaintiff used to perform work even the ALJ conceded Plaintiff can no longer perform falls short of providing "specific, legitimate reasons" for rejecting those opinions. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) (citation and quotation omitted).

In contrast to the zero weight he gave to treating physicians Schwartz and Kaufman, the ALJ gave great weight to the opinions of non-examining state agency medical consultants N.D. Nickerson, M.D., and Michael Slager, M.D. *See* AR 56. As the Tenth Circuit has made clear, "[t]he opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). The Court concludes that the ALJ committed reversible error by providing no specific valid justification for giving the treating physicians no weight while giving the non-examining agency consultants great weight. The Commissioner correctly points out that, "[t]his Court 'may not displace the agency's choice between two fairly conflicting views' even if the Court would have made a different decision based on the evidence." ECF No. 28 at 11 (quoting *Lax v. Astrue*, 489

---

[5]Neither Plaintiff nor the Commissioner cites to a case on point that supports their respective positions regarding the ALJ's consideration of Plaintiff's part-time work. Instead, both parties cite to cases involving the consideration of a claimant's *credibility* in light of work performed, not whether an ALJ may use reports of part-time work to reject a physician's opinion. *See Krauser v. Astrue*, 638 F.3d 1324, 1333 (10th Cir. 2011); *Shepherd v. Apfel*, 184 F.3d 1196, 1202 (10th Cir. 1999). Nevertheless, the Court does not take issue with the notion that a doctor's assessment of what a claimant cannot do may be undermined by evidence of what a claimant actually did – whether as part of recent employment or not. But the ALJ here gave no explanation as to why Plaintiff's recent part time work driving a bus -- work the ALJ determined Plaintiff could no longer do -- caused him to take the extreme and unusual action of giving no weight to the medical opinions of Plaintiff's only treating physicians.

F.3d 1080, 1084 (10th Cir. 2007). But this case does not present two fairly conflicting views. Instead, it presents the views of Plaintiff's only two treating physicians against the views of non-examining agency consultants.

Moreover, Dr. Nickerson and Dr. Slager issued their respective opinions in January and June of 2011. AR 56. In contrast, Dr. Schwartz and Dr. Kaufman issued their opinions in August, 2012 – just two months before the ALJ issued his decision. AR 4, 56. This temporal distinction is significant. Although Plaintiff alleges that his disability began August 1, 2005 (AR 44), medical records indicate that his physical condition has steadily worsened. *See* AR 52-57. Thus, in addition to being entitled to greater deference because of their status as treating physicians, the opinions of Dr. Schwartz and Dr. Kaufman should also be given greater deference because they are the most current. This is especially true since Plaintiff is only currently seeking disability benefits for the time period beginning January 1, 2012. AR 47. It is also significant that, by entering their opinions before the treating physicians' opinions were entered, both non-examining consultants rendered their opinions without the benefit of treatment records post-June 2011. Thus, the opinions of non-examining physicians, Dr. Nickerson and Dr. Slager, cannot be used to justify giving no weight to the more recent opinions of Plaintiff's treating physicians.

For all of the above stated reasons, the Court concludes that the ALJ erred in not adequately justifying his decision to give Plaintiff's treating physicians no weight. As a result, his decision is reversed and this case must be remanded.

### B. Psychiatrist Robert Krueger

Plaintiff also asserts that the ALJ erred by rejecting Dr. Krueger's assessment of Plaintiff's mental abilities solely on the basis of Plaintiff's prior work as a bus driver, while giving the opinions of Dr. Cormier and Dr. Cummings great weight. ECF No. 24 at 9. The ALJ's

mental RFC findings -- explicitly upheld by the Appeals Council -- were as follows: "claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, the general public, and usual work situations." AR 6-7, 50. In formulating Plaintiff's mental RFC, the ALJ stated that he gave "great weight" to the opinions of consultative physician Dr. Cummings and non-examining state agency physician Dr. Cormier, while giving little weight to Dr. Krueger's opinion because "claimant performed work as a bus driver which is a . . . semi-skilled job involving working with people and requiring a CDL." AR 55.

According to Plaintiff, this is an error because (1) rejecting Dr. Krueger's opinion on this basis is inconsistent with SSR 96-8p, 1996 WL 374184, and in any case, the ability to perform part-time work is not automatically inconsistent with a finding of disability; (2) the ALJ's finding is an improper substitution of his own lay opinion for that of Dr. Krueger, who made his finding with full knowledge that Plaintiff had performed part-time work and still concluded Plaintiff had subnormal intellectual abilities; and (3) the ALJ otherwise failed to provide reasons for rejecting salient parts of Dr. Krueger's opinion. ECF No. 24 at 9-14. The Commissioner responds that the ALJ appropriately resolved the conflict between Drs. Cummings, Cormier, and Krueger's opinions by relying on Plaintiff's self-admitted recent past part-time work as a sheepherder and bus driver. ECF No. 28 at 14-15. Because the Court has already found that this case must be remanded, it need not decide whether the ALJ committed reversible error by giving Dr. Krueger's opinion little weight. The Court will, however, address issues regarding the ALJ's analysis of Dr. Krueger's opinion so that they can be resolved on remand.

As an initial matter, the Court notes that Plaintiff incorrectly asserts that the ALJ "rejected" Dr. Krueger's opinion. ECF No. 24 at 13. Rather than rejecting Dr. Krueger's opinion,

the ALJ gave it little weight. AR 55. Nonetheless, for all medical opinions, including those of consulting physicians, the ALJ must consider "(1) the duration of the treatment relationship and the frequency of visits; (2) the character and scope of the treatment relationship; (3) the amount of relevant evidence supporting the physician's opinion; (4) how consistent that opinion is with the rest of the record; (5) whether the physician is a specialist; and (6) other factors tending to support or contradict the opinion." 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ failed to engage in this analysis.

This matters because the ALJ's RFC finding that Plaintiff can carry out simple tasks and interact appropriately with coworkers, supervisors, and the general public, conflicts with Dr. Krueger's opinion that Plaintiff would have marked impairment with his ability to carry out simple tasks and moderate impairment in social functioning. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (explaining that a finding of moderate impairment with social functioning indicates that a person will have some difficulty with social functioning). While the ALJ was entitled to resolve this conflict, he was also required to explain why he accepted certain medical opinions and rejected others. SSR 96–8p, 1996 WL 374184 at *7; *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). The sole explanation provided by the ALJ is that Plaintiff had worked as a bus driver; he otherwise failed to discuss why Dr. Krueger's opinion was rejected in favor of Dr. Cormier, a non-examining physician, and Dr. Cummings, another consulting physician. As with Dr. Schwartz and Dr. Kaufman, the ALJ failed to explain *how* Plaintiff's past work undermined Dr. Krueger's opinion. On remand, the ALJ should provide this analysis.

## IV.   CONCLUSION

Plaintiff has demonstrated that the ALJ improperly failed to support his rejection of certain medical opinions. These failures constitute reversible legal error. On remand, the ALJ is shall reevaluate the opinions of Dr. Krueger, Dr. Schwartz, and Dr. Kaufman in a manner consistent with this opinion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand (ECF No. 23) is **GRANTED**.


UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**